UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHRISTOPHER B. HILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.  3:18-CV-168-TAV-DCP |
| | ) |
| KNOX COUNTY JAIL, | ) |
| KNOX COUNTY SHERIFF'S OFFICE, | ) |
| and KNOX COUNTY COURTS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pro se Plaintiff, Christopher B. Hillard, brought this action on April 13, 2018, pursuant to 42 U.S.C. § 1983. The matter is now before the Court for screening of the complaint pursuant to the Prison Litigation Reform Act ("PLRA"). For the reasons set forth below, this action will be **DISMISSED** based on Plaintiff's failure to state a claim up on which relief may be granted.

**I.    SCREENING THE COMPLAINT**

Under the PLRA, district courts must screen prisoner complaints and shall, at any time, dismiss *sua sponte* any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory

language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe *pro se* pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 . . . creates a right of action for the vindication of constitutional guarantees found elsewhere").

## II. BACKGROUND

In his complaint, Plaintiff complains that his arrest and charges were made public and have tarnished his reputation in the community [Doc. 1 p. 4]. He asserts that "[t]he government should be responsible for clearing our names as it is to ruining our names" [*Id*.]. He believes that "[p]eople's charges should not be made public until they are found guilty" and by publicizing his charges, Defendants have violated his due process [*Id*.].

Plaintiff further complains about the conditions of Knox County Jail [*Id*. at 5]. He complains that for two-and-a-half days he was without a bed or change of clothes and unable to take a shower [*Id*.]. After booking, Plaintiff complains that he was placed in a

one-man cell for four days with another inmate and forced to eat his meals in the small cell near the toilet [*Id*.].

Next, Plaintiff complains that Knox County Jail has no law library, no face-to-face visitation with family, and houses all classification of inmates together [*Id*.]. Knox County Jail also charges inmates tax on commissary items, to make phone calls, and to transfer money into their trust fund accounts [*Id*.]. Plaintiff asserts that Knox County jail limits inmates recreation time to either four hours or one hour per day [*Id*.].

## III. PUBLICATION OF ARREST

First, Plaintiff alleges that Defendants published information concerning his arrest via the internet that has violated his Constitutional right for due process [Doc. 1 p. 4]. Plaintiff contends that the publication of his arrest information suggests he is guilty when he has not yet been found guilty of any crime.

To the extent Plaintiff intends to assert a procedural due process claim, it is subject to dismissal. To state a claim for denial of procedural due process, Plaintiff must plead and prove either that he was deprived of liberty or property as a result of an established state procedure that itself violates due process rights; or that the defendants deprived him of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). Under this standard, Plaintiff must first establish that he was deprived of a protected liberty or property interest. *Macene*, 951 F.2d at 706. The Supreme Court has recognized a limited liberty

3

interest "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). *See also Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 413–14 (6th Cir. 2002). Injury to reputation alone, however, is not sufficient to create a constitutionally protected liberty interest. *Paul v. Davis*, 424 U.S. 693, 701 (1976). Here, although Plaintiff alleges he was stigmatized by the dissemination of his arrest information, he failed to show that any Defendant also deprived him of a state created right or interest.

Plaintiff's substantive due process claim is also subject to dismissal. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right, or are so egregious that they "shock the conscience." *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.*

The Sixth Circuit has found an individual has no constitutional right to privacy in the criminal record pertaining to him. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (finding Court Clerk's publication of arrest records including social security numbers and birth dates did not implicate a constitutional right of privacy, even when plaintiff became the victim of identity theft as a result of the publication). Here, Plaintiff has not alleged facts to suggest the government's publication of his arrest violated a fundamental right protected by the Constitution. There is no general fundamental right of informational privacy, and Plaintiff does not allege facts suggesting the information itself

4

placed him in immediate danger of bodily harm. Plaintiff fails to state a claim for denial of substantive due process.

Accordingly, Plaintiff's claim that the publication of his arrest violates his due process will be **DISMISSED**.

## IV.  CONDITIONS OF CONFINEMENT

Plaintiff's allegations regarding the conditions at the jail, accepted as true, do not allow the Court to plausibly infer that those conditions have violated Plaintiff's constitutional rights. "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" will establish a conditions of confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted). Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36 (1993); *see also Rhodes*, 452 U.S. at 347.

Nothing in the complaint suggests that spending two-and-a-half days without a bed, shower, or change of clothes creates an unreasonable risk of damage to Plaintiff's health

5

or any other extreme deprivation. Accordingly, these allegations fail to state a claim upon which relief may be granted under § 1983 and will be **DISMISSED**.

V. **OVERCROWDED**

The Sixth Circuit has held that "overcrowding is not, in itself, a constitutional violation." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). To allege extreme deprivation to support a viable prison-overcrowding claim, an inmate must allege that the overcrowding results in "deprivations denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[I]f the overcrowding results in the denial of a basic human need, such as food, shelter, or warmth, that would be a constitutional wrong." *Starnes v. Green Cty. Sheriff's Dep't*, No. 2:08-cv-244, 2010 WL 2165368, at *5 (E.D. Tenn. May 26, 2010). Plaintiff's allegations do not meet this standard.

Plaintiff asserts that he spent four days in a one-man cell with another inmate and was forced to sleep on a mat on the floor for those four days and eat his meals in the cell near a toilet [Doc. 1 p. 5]. However, these allegations do not state a claim cognitive under § 1983 because Plaintiff has failed to show a denial of basic human need or extreme deprivation. The Court finds sleeping on the floor for four days and housed with one other inmate was a temporary inconvenience. *See, Sanders v. Kingston*, 53 F. App'x 781, 783 (7th Cir. 2002) ("We know of no case holding that the Eighth Amendment requires elevated beds for prisoners, and [plaintiff] does not cite one."). Further, although eating meals in a small cell also containing a toilet may be unpleasant for Plaintiff, the Constitution does not protect a prisoner from unpleasant prison experiences. Nor does the Constitution mandate

comfortable conditions of confinement. *Rhodes*, 101 S.Ct. 2400. The deprivations alleged are insufficiently serious to establish that Plaintiff has been subject to cruel and unusual punishment in violation of the Eighth Amendment. Thus, Plaintiff's complaints concerning overcrowding at Knox County Jail will be **DISMISSED**.

## VI. RECREATION TIME

Plaintiff asserts that some inmates are allowed four hours of recreation time while other inmates only receive one hour of recreation time per day [Doc. 1 p. 6]. Plaintiff does not clarify how much time he receives daily, but, either way, this claim fails to state an constitutional violation. "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). The Sixth Circuit has not "set a minimum amount of time a prisoner must have access to outdoor recreation." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Rodgers v. Jabe*, 43 F.3d 1082, 1086–87 (6th Cir. 1995); *Walker v. Mintzes*, 771 F.2d 920, 927–28 (6th Cir. 1985). Courts have found that even only one hour of recreation time per day does not violate the Eighth Amendment. *See, Argue*, 80 F. App'x at 429. Moreover, the complaint does not allege that the exercise restrictions have adversely affected Plaintiff's health. In sum, this claim of limited hours of recreation will be **DISMISSED**.

## VII. PAYMENT OF FEES

Plaintiff argues that he is charged a fee for commissary items and to transfer money to make a phone call [Doc. 1 p. 5]. Plaintiff cites to no provision of the United States Constitution as the basis for these claims and, indeed, these claims simply do not state a claim of constitutional magnitude.

Most courts find that commissary pricing does not implicate constitutional concerns. *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison . . . snack shop."); *Bennett v. Sheahan*, 1999 WL 967534, *4 (N.D. Ill., Oct. 5, 1999) ("Commissary prices implicate no constitutional right"); *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) ("[T]here is no constitutional right to purchase food from the canteen"). Commissary access is a privilege, not a right, and these allegations fail to state a cognizable constitutional claim for relief under 42 U.S.C. § 1983. If Plaintiff does not wish to pay the complained of amounts, he should not patronize the commissary.

Next, Plaintiff complains that he is charged $0.75 to "transfer money to phone" [Doc. 1 p. 5]. However, he does not state how much inmates are charged to make calls. *See Carter v. O'Sullivan*, 924 F.Supp. 903, 911 (C.D. Ill. 1996) (The rate of $1.50 for a ten (10) minute phone call is "not so out-of-line with normal phone rates as to be unconscionable."). While prisoners retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). "Instead, a prisoner's right to

telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Id.* In addition, there is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls. *See Boyer v. Taylor*, 2007 WL 2049905, *9 (D. Del., July 16, 2007). Here, Plaintiff has not provided any information from which the Court could infer the jail's cost associated to make phone calls infringe upon his constitutional right to communicate with family, friends, and counsel; Plaintiff makes no such allegation. As such, Plaintiff's complaints regarding the payment of fees to transfer money and for commissary will be **DISMISSED**.

## VIII. ACCESS TO COURTS

Plaintiff complains that there is no law library available at Knox County Jail [Doc. 1 p. 5]. The court construes this claim as one under the First Amendment, the right of access to the courts. In *Bounds v. Smith,* 430 U.S. 817 (1977), the Supreme Court of the United States wrote that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. However, "[p]risoners may not dictate to the state the method by which access to the courts will be assured." *Penland v. Warren County Jail,* 759 F.2d 524, 531 n. 7 (6th Cir. 1985).

In short, the State has the option of where and when and how inmates may be assisted in accessing the courts. A law library is not required under the First Amendment. The United States Court of Appeals for the Sixth Circuit has specifically held that a First Amendment claim must be based upon an actual denial of access to the courts rather than access to a law library. *See Childs v. Pellegrin*, 822 F.2d 1382, 1385 (6th Cir.1987).

Further, a plaintiff fails to state a claim of First Amendment denial of right of access to courts unless he has shown actual prejudice to underlying litigation. *See Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). A pro se litigant alleging denial of access to the courts must establish that either his defense or other pending civil matters have been prejudiced by the alleged denial of access. *See Flittie v. Solem*, 827 F.2d 276, 280 (8th Cir. 1987). Plaintiff has made no such showing and this claim will be **DISMISSED**.

## IX. VISITATION

Plaintiff complains the he is denied face-to-face visitation with his family while incarcerated at Knox County Jail, rather inmates use a kiosk system for personal visitations [Doc. 1 p. 5]. The Court finds that Knox County Jail's prohibition on contact visits is an entirely reasonable, nonpunitive response to legitimate security concerns, consistent with the Fourteenth Amendment. Contact visits invite a host of security problems. *Block v. Rutherford*, 468 U.S. 576 (1984). They have been found to open a detention facility to the introduction of drugs, weapons, and other contraband. *Id*. Totally disallowing contact visits is not excessive in relation to the security and other interests at stake. Nothing in the Constitution requires detainees, such as Plaintiff's classification, be allowed contact visits;

responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility and other persons and the Court does not intervene with such penal decisions. This claim will be **DIMISSED**.

## X. POTENTIAL CLAIM

Plaintiff argues that when in his cell, there is "no way to let them know I need medical emergency" [Doc. 1 p. 5]. However, Plaintiff does not claim that he has experienced any medical emergency or that he was unable to notify any Defendant of any medical emergency. Plaintiff's complaint appears to be purely hypothetical. Nothing in Plaintiff's complaint allows the Court to plausibly infer that this assertion has personally affected Plaintiff or violated his constitutional rights in any way and Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989). This claim will be **DISMISSED**.

## XI. CLASSIFICATION OF INMATES

Plaintiff claims that federal inmates and pretrial detainees are improperly housed together [Doc. 1 p. 5]. However, placement of prisoners is a matter left to the discretion of state officials, and a prisoner has no constitutional right or protected liberty interest to be housed in any particular facility or unit. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). As such, this claim will be **DISMISSED**.

## XII. CONCLUSION

Based on the above, Plaintiff's complaint fails to state any claim upon which relief may be granted under § 1983 and this action will therefore be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**AN APPROPRIATE ORDER SHALL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE